UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| EBONI NICOLE BALDWIN, § § Plaintiff, § VS. § HARRIS COUNTY SHERIFF § DEPARTMENT, *et al*, § § Defendants. § | CIVIL ACTION NO. 4:16-CV-2966 |

## MEMORANDUM & ORDER

Pending before the Court is Defendant Latoisha Dorsey's Motion to Dismiss (Doc. No. 35). After considering the Motion, the responses thereto, and all applicable law, the Court determines that the Motion should be denied.

**I.   BACKGROUND**

Plaintiff Eboni Nicole Baldwin alleges the following facts.[1] Plaintiff, a combat veteran who served in Iraq and Afghanistan, took medication prescribed to her to treat post-traumatic stress disorder ("PTSD"). (Doc. No. 16 at ¶ 6.) After one particular instance of taking the medication, she began to feel severely depressed. *Id.* Unable to find her cell phone to call for help, Plaintiff got in her car to drive to the hospital, bringing along her prescription medication. *Id.* at ¶¶ 6-8. Plaintiff felt alert when she got into the car. *Id.* While driving, Plaintiff felt like she was dying, and she attempted to turn into a Walgreens parking lot. *Id.* at ¶ 9. Before entering the parking lot, she became unconscious. *Id.* at ¶ 10. A bystander called an ambulance, and Plaintiff regained consciousness only after an emergency medical technician ("EMT") shook her awake.

---

[1] Because this case is at the pleading stage, the Court accepts all well-pleaded facts as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

1

*Id.* at ¶¶ 11-12. Plaintiff explained to the EMT that she was a veteran with PTSD on her way to the hospital after having a reaction from what she believed was Ambien. *Id*. at ¶ 12.

When Harris County Sheriff's Deputy Latoisha Dorsey ("Defendant") arrived, Plaintiff was still unconscious and unresponsive. *Id.* at ¶ 16. Defendant "forcibly grabbed" Plaintiff from her car, handcuffed her, and pushed her into the back of a patrol car. *Id.* at ¶ 19. Defendant searched Plaintiff's vehicle. *Id.* Defendant asked Plaintiff if she wanted to go to the hospital. *Id.* at ¶¶ 20-21. Plaintiff, who was "groggy," responded, "huh?" *Id.* Defendant then told the EMT that Plaintiff did not want to go to the hospital, and the EMT left. *Id.* at ¶¶ 21-22.

Defendant drove Plaintiff to Houston Police Central Intox.[2] *Id.* at ¶ 26. On the way there, Plaintiff asked where she was being taken. *Id.* at ¶ 23. Defendant said that because Plaintiff refused to give a field sobriety test, there was a warrant for a blood sample. *Id.* at ¶ 24. Plaintiff said she was willing to take a field sobriety test and that she was on her way to the hospital for PTSD complications. *Id*. at ¶ 25. Plaintiff explained that she felt like she was dying and asked to be taken to the hospital. *Id.* at ¶ 27.

When a nurse came to take Plaintiff's blood sample at Houston Police Central Intox, Plaintiff stated that she needed to go to the hospital because she was having a bad reaction to medicine prescribed to treat her PTSD. *Id.* at ¶ 28. The nurse asked Defendant why she had not taken Plaintiff to the hospital before bringing her to jail, to which Defendant replied that her son had a sports game the next day and Defendant did not want to miss it. *Id.* at ¶ 29.

Defendant agreed to take Plaintiff to the hospital at the nurse's urging, but stated that if she had to wait more than an hour, she would issue a warrant for Plaintiff at the hospital. *Id.* at ¶

---

[2] Houston Police Central Intox, the parties explained, is a police office that conducts blood draws to determine if a person is under the influence of drugs or alcohol. (*See* Transcript of Oral Argument at 24-26.)

30. After screening and treatment, Defendant took Plaintiff directly from the hospital to be booked into the Harris County Jail. *Id.* at ¶ 33.

Plaintiff alleges Defendant was aware of the prescription bottles and Plaintiff's PTSD, and that she failed to contact the Harris County Mental Crisis Unit or allow Plaintiff to be fully evaluated at the hospital. *Id*. at ¶¶ 37-38. Plaintiff alleges the anxiety she experienced during her "prolonged imprisonment in the back of [Defendant's] patrol car" caused her PTSD symptoms to worsen, ultimately leading to a 19-day hospitalization in the Veteran Affairs Hospital. *Id*. at ¶ 51; *see also id*. at 54-55. Plaintiff alleges she suffered economic damage, including loss of gainful employment because of the arrest. *Id*. at ¶ 53.

Plaintiff's present complaint alleges three § 1983 claims: one based on unreasonable seizure, false arrest, and false imprisonment; a second based on malicious prosecution; and a third based on deliberate indifference. *Id*. ¶¶ 44-51. Following this Court's order on an earlier motion to dismiss, only the third claim remains. (*See* ECF Minute Entry dated 6/16/2017.) Deputy Dorsey is the only remaining defendant.

**II.    LEGAL STANDARD**

Defendant styled her motion as a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6). However, the parties presented materials outside the pleadings. Federal Rule of Civil Procedure 12(d) provides for such a situation:

> If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

Fed. R. Civ. P. 12. This Court treats the motion as a Rule 12(b)(6) motion, and not as one for summary judgment.[3] At this time, the Court has excluded matters outside the pleadings.

A court may dismiss a complaint for a "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, a complaint must contain sufficient factual matter that, if it were accepted as true, it would "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

---

[3] If the Court were to treat the motion as one for summary judgment, the Motion would fail. Summary judgment is proper when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if a reasonable jury could enter a verdict for the non-moving party. *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000). Defendant's arguments at the hearing deviated from the facts alleged in the pleadings and the parties disputed the sequence of events around when Plaintiff was taken to the hospital. (*See* Transcript of Oral Argument at 11, 27-28, 30.)

Further, if the Court were to treat the Westlake EMS report attached to Defendant's Motion as "part of the pleadings . . . central to her claim," there would still be factual disputes. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000). The report says Plaintiff declined to go to the hospital and "refused to answer and became silent" when the EMS tried to convince her to go to the hospital. (Doc. No. 35-1.) The report also indicates both that Plaintiff was "dosing off, tired, and slurring her words," and she ultimately "refused to sign" a form acknowledging that she declined to go to the hospital. *Id*. The report shows that the EMT wanted to take Plaintiff to the hospital, and it could show that Plaintiff was in and out of consciousness, uncertain of what was going on, and variably declining and refusing to decline hospital treatment. But, whether Plaintiff expressed a desire to go to the hospital is not determinative of the case. As explained in the Analysis section, the focus is on what Defendant knew or inferred about Plaintiff's risk of harm. This case would benefit from further development of the record.

alleged." *Id*. (citing *Twombly*, 550 U.S at 556). The plausibility standard "is not akin to a 'probability requirement,'" though it does require more than a "sheer possibility" that a defendant has acted unlawfully. *Id*.

Ultimately, the question for the court to decide is whether the complaint states a valid claim when viewed in the light most favorable to the plaintiff. The court must accept well-pleaded facts as true, but legal conclusions are not entitled to the same assumption of truth. *Iqbal*, 556 U.S. at 678 (citation omitted). The court should not "strain to find inferences favorable to the plaintiffs" or "accept 'conclusory allegations, unwarranted deductions, or legal conclusions.'" *R2 Investments LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc*., 365 F.3d 353, 361 (5th Cir. 2004)). The court should not evaluate the merits of the allegations, but must satisfy itself only that plaintiff has adequately pled a legally cognizable claim. *United States ex rel. Riley v. St. Luke's Episcopal Hosp*., 355 F.3d 370, 376 (5th Cir. 2004).

### III. ANALYSIS

Under the Due Process Clause of the Fourteenth Amendment, pretrial detainees have a constitutional right not to have confining officials treat their serious medical needs with deliberate indifference. *See Jacobs v. W. Feliciana Sheriff's Dep't,* 228 F.3d 388, 393 (5th Cir. 2000). "The State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including medical care and protection from harm, during their confinement." *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 650 (5th Cir. 1996).

"[D]elay in medical care" only amounts to a constitutional violation "if there has been deliberate indifference, which results in substantial harm." *Mendoza v. Lynaugh*, 989 F.2d 191,

195 (5th Cir. 1993). Deliberate indifference "requires both that the government official have 'subjective knowledge of substantial risk of serious harm to a pretrial detainee' and that the government official respond with 'deliberate indifference to that risk.'" *United States v. Gonzales,* 436 F.3d 560, 573 (5th Cir.2006) (quoting *Hare*, 74 F.3d at 650). "Deliberate indifference in the context of an episodic failure to provide reasonable medical care to a pretrial detainee means that: 1) the official was aware of facts from which an inference of substantial risk of serious harm could be drawn; 2) the official actually drew that inference; and 3) the official's response indicates the official subjectively intended that harm occur." *Thompson v. Upshur Cty.*, 245 F.3d 447, 458-59 (5th Cir. 2001).

A government official's knowledge of a substantial risk of harm may be inferred if the risk was obvious. *McIntosh v. Smith*, 690 F. Supp. 2d 515, 528 (S.D. Tex. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825 (1994)). An incorrect diagnosis may not be sufficient for a deliberate indifference claim. *Domino v. Texas Dep't. of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). In contrast, where the plaintiff shows that an official "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs," the plaintiff satisfies the pleading standard. *Id.*

On the face of the amended complaint, Defendant evinced a wanton disregard for the serious medical nature of Plaintiff's PTSD by delaying her treatment. First, Plaintiff has alleged sufficient facts to establish that Defendant knew of the substantial risk of serious harm and, second, must have drawn that inference. The risk was apparent enough that a bystander called an

ambulance.[4] (Doc. No. 16 at ¶ 11.) Plaintiff was in and out of consciousness. *Id*. at ¶¶ 10, 19-21. Plaintiff informed Defendant that she had been on her way to the hospital because she was a veteran having PTSD complications. *Id*. at ¶ 25. When later asked why Defendant had not taken Plaintiff to the hospital, Defendant expressed concern that hospital treatment would have taken too long—not that it was unnecessary. *Id.* at ¶ 29. Third, Plaintiff alleges Defendant's response to the risk of harm shows intent to cause harm. Despite the substantial risk of harm, Defendant told an EMT that Plaintiff did not want to go to the hospital, causing the EMT to leave. *Id*. at ¶¶ 21-22. Defendant told a nurse she did not take Plaintiff to the hospital because her son had a sports game the next day and Defendant did not want to miss it. *Id.* at ¶ 29. This is not a case of a mistaken diagnosis; Plaintiff has alleged a case of a police officer prioritizing her personal schedule over the medical needs of a woman in her custody.

Plaintiff has also alleged facts that the deliberate indifference resulted in substantial harm. Defendant's argument that Plaintiff was ultimately afforded medical care and did not allege injuries that resulted specifically because the care was delayed (*see, e.g.*, Doc. No 49), is not dispositive. First, "mere proof of medical care" does not automatically disprove deliberate indifference. *Smith v. Jenkins*, 919 F.2d 90, 93 (8th Cir. 1990) (suggesting a review of medical records was required before a determination of deliberate indifference could be made). On the contrary, plaintiffs can bring claims for delay in care where they also allege the delay resulted in substantial harm. *Mendoza*, 989 F.2d at 193; *see also Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir.1985). Second, Plaintiff alleged harm resulting from the delay: the lack of medical care and time spent in Defendant's patrol car caused Plaintiff's "PTSD symptoms to worsen," "severe emotional distress, depression and psychiatric treatments that led

---

[4] Defendant has put forth evidence that the EMT wanted to take Plaintiff to the hospital, further demonstrating the risk of harm was obvious. (*See* Doc. No. 35-1.)

to [Plaintiff] being hospitalized in the Veteran Affairs Hospital for 19 days after her arrest," and the loss of her job. (Doc. No. 16 at ¶¶ 51, 53-55.)

The unpublished opinion that Defendant filed is factually and procedurally distinguishable. *See Childers v. San Saba Cty.*, No. 16-51422, 2018 WL 264801, at *1 (5th Cir. Jan. 2, 2018). In *Childers*, which was decided on summary judgment, the delay in medical care claim failed because there was insufficient causal evidence to link missing one dose of a heart medication to death 25 days later. *Id*. Other cases that Defendant cites in her filings are similarly distinguishable. *Fuller v. Harris County* was also decided on summary judgment with the benefit of medical records, 294 Fed. App'x 167, 169 (5th Cir. 2008), as was *Black v. Jones*, 2016 WL 4917478 (W.D. La. Aug. 8, 2016). The *Black* plaintiff also failed to allege a resulting substantial injury more than "continuing pain or discomfort" and "theoretical future injuries." *Id*. at *9. A district court in *Garza v. Lovington* noted that the plaintiff had alleged he was treated "negligently" and did not allege any substantial harm resulting from the delay. 2017 WL 3475679 (N.D. Tex. Aug. 11, 2017) (adopting *Garza v. Lovington*, 2017 WL 3475685 (N.D. Tex. July 18, 2017)). As explained above, the present claim for deliberate indifference was sufficiently pled and would benefit from further development of the evidentiary record.

## IV. CONCLUSION

For the reasons set forth above, Defendant Dorsey's Motion to Dismiss is **DENIED**.

This Court recognizes that Plaintiff is pro se, and that the coming stages of trial will be increasingly difficult without counsel. While Plaintiff has been skillfully representing herself pro se and may continue to proceed pro se, she may also seek licensed counsel through organizations such as the Houston Volunteer Lawyers or law school clinical programs.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas on this the 19th day of January, 2018.

_____
HON. KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE