UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| EBONI NICOLE BALDWIN, § § § Plaintiff, § § v. § § HARRIS COUNTY SHERIFF § DEPARTMENT, *et al.*, § § Defendants. § § § | Civil Action No. 4:16-CV-02966 |

## MEMORANDUM & ORDER

At a hearing on June 27, 2019, the Court heard oral argument on Defendant Latoisha Dorsey's ("Defendant") Motion for Summary Judgment. At the hearing, the Court denied the motion, because the Court found that a genuine issue of material fact remained as to the availability of qualified immunity. Defendant subsequently appealed the Court's denial of qualified immunity. (Doc. No. 101.) At the request of both parties, the Court now reduces to writing the genuine issues of material fact effecting its oral denial of summary judgement. *See Silverthorne v. Laird*, 460 F.2d 1175, 1178-79 (5th Cir. 1972); 16A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3949.1 (4th ed. 2019) (noting that, after a notice of appeal is filed, a district court "may reduce to writing an earlier oral decision" so as long as it does "not alter the substance of the decision").

**I.     BACKGROUND**

On consideration of a motion for summary judgment, the Court construes all contested factual issues in the light most favorable to the non-movant. *Bourne v. Gunnels*, 921 F.3d 484, 492

(5th Cir. 2019). For the purpose of deciding the motion for summary judgment, the Court finds that the facts, construed in the light most favorable to the non-movant, are as follows.

Plaintiff is a combat veteran who served in Iraq and Afghanistan. (Doc. No. 97-18.) Late in the evening on September 26, 2014, Plaintiff took Ambien prescribed to her to treat her diagnosed post-traumatic stress disorder ("PTSD"). (Doc. No. 97-2 at 6.) Shortly thereafter, Plaintiff left her house in her car, attempting to reach the hospital. (Doc. No. 97-1 at 74.)[1] Plaintiff felt calm and alert when she got into the car. (Doc. No. 97-1 at 74.) However, at some point, Plaintiff became unable to operate her vehicle. (Doc. No. 97-1 at 74.)

A bystander found Plaintiff sitting in her car, stopped at a red light. (Doc. No. 97-3.) The bystander attempted to communicate with Plaintiff, but found that she was incoherent. (Doc. No. 97-3.) The bystander later stated that Plaintiff "was not asleep, but was not responsive to [his] questions to her." (Doc. No. 97-3.) The bystander called an ambulance. (Doc. No. 97-3.) Plaintiff told the emergency medical technician ("EMT") that she had PTSD and had taken four Ambien. (Doc. No. 97-4.) The EMT noticed two more pills, later identified as Ambien, in Plaintiff's hand, and an opened water bottle in her lap. (Doc. No. 97-2; Doc. No. 97-4.) The EMT wanted to take Plaintiff directly to the hospital. (Doc. No. 97-4.)

---

[1] On summary judgment, only "factual allegations set forth in a *verified* complaint may be treated the same as when they are contained in an affidavit." *Hart v. Hairston*, 343 F.3d 762, 765 (5th Cir. 2003). The operative Second Amended Complaint was signed, but not sworn. (Doc. No. 16 at 9.) Although the First Amended Complaint was sworn to in the presence of a notary, it was superseded by the Second Amended Complaint. (Doc. No. 4.) *See King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994). Thus, the Court may not consider the factual allegations in the complaints as summary judgment evidence.

When Defendant arrived on the scene, Plaintiff was still experiencing intermittent unconsciousness. (Doc. No. 97-2 at 6.) Defendant and other deputies removed Plaintiff from her car, handcuffed her, and pushed her into the back of a patrol car. (Doc. No. 97-6 at 0:53-0:56.) Deputies then proceeded to search Plaintiff's vehicle, which clearly displayed a disabled placard in the front window. (Doc. No. 97-6 at 1:05-1:22.) In a video recorded by Defendant's dash cam, Plaintiff can be heard telling someone off-camera with a male voice that she has PTSD. (Doc. No. 97-8 at 1:07-1:08.)

Defendant drove Plaintiff to Houston Police Central Intox ("Intox"), a police department facility where law enforcement conducts blood draws to determine if an individual is intoxicated. (Doc. No. 97-2 at 6; Doc. No. 97-14 at 23.) At some point during the drive, Defendant manually disabled the video and audio recording equipment inside her police cruiser, a violation of department policy. (Doc. No. 97-5 at 136; Doc. No. 97-11 at 159-165.) On the way to Intox, Plaintiff told Defendant that she felt suicidal, and asked to be taken to the hospital. (Doc. No. 97-1 at 104.) Defendant refused and instead proceeded to Intox, where Plaintiff was left handcuffed to a bench in a cell for two hours to wait for her blood draw. (Doc. No. 97-1 at 104; Doc. No. 97-2 at 6; Doc. No. 97-5 at 138; Doc. No. 97-10 at 4-5.)

Defendant did not inform the nurse conducting the blood draw that Plaintiff had ingested Ambien. (Doc. No. 97-5 at 144.) During the blood draw, Plaintiff asked Defendant about veterans' court. (Doc. No. 97-15 at 7:32-7:37.) Defendant told Plaintiff that she did not know, but an off-screen voice told Plaintiff she could discuss it with pre-trial. (Doc. No. 97-15 at 7:39-7:47.) After the blood draw, Defendant took Plaintiff to Harris County Jail. (Doc. No. 97-5 at 144; Doc. No. 97-10 at 5.)

Upon booking at the jail, Plaintiff again told Defendant that she needed to go to the hospital, because she felt suicidal. (Doc. No. 97-2 at 6; Doc. No. 97-5 at 147-48.) A jail nurse was called over at this point. (Doc. No. 97-2 at 6.) After learning of Plaintiff's suicidal ideations and recent overdose, the nurse and a staff doctor directed Defendant to take Plaintiff to the hospital. (Doc. No. 97-2 at 6; Doc. No. 97-5 at 150.) Defendant then transported Plaintiff to the hospital. (Doc. No. 97-2 at 6; Doc. No. 97-5 at 150.)

Plaintiff's screening and treatment at the hospital lasted less than an hour. (Doc. No. 97-10 at 5; Doc. No. 97-17.) Medical records include a (struck through) notation that Plaintiff was having thoughts of suicide. (Doc. No. 97-17 at 8.) After discharge, Defendant took Plaintiff directly from the hospital to be booked into the Harris County Jail. (Doc. No. 97-5 at 222; Doc. No. 97-10 at 5.)

After the incident with Defendant, Plaintiff's suicidal symptoms worsened. (Doc. No. 97-1 at 33-34, 134-35, 137-38; Doc. No. 97-18; Doc. No. 97-20). She has developed symptoms of hypervigilance, irritability, diminished concentration, and insomnia. (Doc. No. 97-1 at 33-34, 134-35, 137-38; Doc. No. 97-20.) She required extended hospitalization to treat her PTSD, and she experiences nightmares, flashbacks, and recurring bad memories related to the arrest. (Doc. No. 97-1 at 33-34; Doc. No. 97-18; Doc. No. 97-20.) She also suffers from symptoms of "re-experiencing" her trauma, including fear of the police, fear of travelling, and fear of prescribed therapeutic medications, all of which adversely impact her mental health. ((Doc. No. 97-1 at 33-34, 134-35, 137-38; Doc. No. 97-20.)

Additionally, Plaintiff's employers learned of her arrest and terminated her. (Doc. No. 97-1 at 52.) The criminal charges against Plaintiff were dismissed, and Plaintiff's Motion for Expunction of Records relating to her arrest was granted. (Doc. No. 97-1 at 47; Doc. No. 97-21; Doc. No. 97-22.)

Critically, Defendant disputes several portions of this narrative. Defendant maintains that Plaintiff reported that she was suicidal only once, just before being booked into the Harris County Jail. (Doc. No. 97-5 at 148.) Defendant produced some evidence that Plaintiff refused the EMT's urging to accept transportation to the hospital. (Doc. No. 94-3 at 82; Doc. No. 97-4.) However, Defendant concedes that, if Plaintiff's account is accurate, then Defendant had a duty to "immediately seek medical treatment for her." (Doc. No. 97-5 at 135.) Defendant also testified that she had direct experience with suicidal inmates when she worked in the Harris County jail, and that she was trained in such cases to seek medical intervention before anything else. (Doc. No. 97-5 at 42-45; Doc. No. 97-23.)

Defendant's arguments—both in the briefing and at the July 27, 2019 hearing—hinged on the disputed facts being construed in her favor. And at no point did she "contend[] that 'taking all [Baldwin]'s factual allegations as true[,] no violation of a clearly established right was shown.'" *Reyes v. City of Richmond*, 287 F.3d 346, 351 (5th Cir. 2002) (quoting *Cantu v. Rocha*, 77 F.3d 795, 803 (5th Cir. 1996)).

## II. APPLICABLE LAW

### A. SUMMARY JUDGMENT

On a motion for summary judgment, the movant can succeed only if there is "no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "A fact is material only when it might affect the outcome of the suit under the governing law, and a fact is genuinely in dispute only if a reasonable jury could return a verdict for the non-moving party." *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006). When deciding a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id.*

When a defendant asserts qualified immunity in a motion for summary judgment, the normal burden shifts slightly. *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). "Once a government official asserts [qualified immunity], the burden shifts to the plaintiff to rebut the defense . . . ." *Bourne v. Gunnels*, 921 F.3d 484, 490 (5th Cir. 2019) (internal quotation marks omitted). All factual inferences are still drawn in the plaintiff's favor, unless they are "blatantly contradicted and utterly discredited by video recordings." *Id.* (internal quotation marks omitted) (quoting *Hanks v. Rogers*, 853 F.3d 738, 744 (5th Cir. 2017)). Where the plaintiff has submitted evidence sufficient to create material questions of fact relative to the immunity, the question of immunity is properly one for the jury to decide. *See Heaney v. Roberts*, 846 F.3d 795, 802 & n.3 (5th Cir. 2017); *Snyder v. Trepagnier*, 142 F.3d 791, 799-800 (5th Cir. 1998).

B. QUALIFIED IMMUNITY

Public officials are entitled to qualified immunity from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." *Jennings v. Patton*, 644 F.3d 297, 300 (5th Cir. 2011) (quoting *Pearson v. Callahan*, 555 U.S. 223 (2009)). There is a two-step test for determining whether qualified immunity applies: (1) "whether, viewing the summary judgment evidence in the light most favorable to the plaintiff, the defendant violated the plaintiff's constitutional rights"; and (2) "whether the defendant's actions were objectively unreasonable in light of clearly established law at the time of the conduct in question." *Freeman v. Gore*, 483 F.3d 404, 410-11 (5th Cir. 2007).

The existence of "clearly established" law is a question for the court. *Elder v. Holloway*, 510 U.S. 510, 516 (1994). The focus of the inquiry is whether the officer "had fair notice that her conduct was unlawful." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004)). Although the doctrine "does not require a case directly on

point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* at 1152 (internal quotation marks omitted) (quoting *White v. Pauly*, 137 S. Ct. 548, 551 (2017)); *see also Keller v. Fleming*, 930 F.3d 746, at *6 (5th Cir. July 23, 2019) ("The 'salient question' is not whether there are previous cases with facts that are 'fundamentally similar,' but rather, 'whether the state of the law [at the time of defendants' conduct] gave [them] fair warning that [plaintiff's] alleged treatment was unconstitutional.'" (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002))).

"[G]eneral statements of the law are not inherently incapable of giving fair and clear warning to officers . . . ." *White*, 137 S. Ct. at 552 (internal quotation marks omitted) (quoting *United States v. Lanier*, 520 U.S. 259, 271 (1997)). "[O]fficials can still be on notice that their conduct violates established law even in novel factual circumstances." *Hope*, 536 U.S. at 741. However, courts must not "define clearly established law at a high level of generality," *Kisela*, 138 S. Ct. at 1152; the Supreme Court has described qualified immunity as protecting "all but the plainly incompetent or those who knowingly violate the law," *id.*

C. DELIBERATE INDIFFERENCE

The Eighth Amendment prohibits the "unnecessary and wanton infliction of pain," including "deliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Pre-trial detainees like Plaintiff are protected under the Due Process Clause of the Fourteenth Amendment. *Garza v. City of Donna*, 922 F.3d 626, 632 (5th Cir. Apr. 26, 2019). Under both the Due Process Clause and the Eighth Amendment, "the State owes the same duty . . . to provide both pretrial detainees and convicted inmates with basic human needs, including medical care and protection from harm, during their confinement." *Hare v. City of Corinth*, 74 F.3d 633, 650 (5th Cir. 1996). A "delay in medical care" is a constitutional violation "if there has

7

been deliberate indifference, which results in substantial harm." *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993).

"Deliberate indifference is an extremely high standard to meet." *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). To prove deliberate indifference, the plaintiff must show that the official was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," and that the official actually "dr[e]w the inference." *Hyatt v. Thomas*, 843 F.3d 172, 177 (5th Cir. 2016) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). In addition, the official must have "disregard[ed] that risk by failing to take reasonable measures to abate it." *Arenas v. Calhoun*, 922 F.3d 616, 620 (5th Cir. 2019).[2]

Mere negligence will not sustain a deliberate indifference claim. *Hyatt*, 843 F.3d at 178. The plaintiff "must show that the officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs,'" *Arenas*, 922 F.3d at 620–21 (quoting *Domino*, 239 F.3d at 756).

### III. ANALYSIS

#### A. DELIBERATE INDIFFERENCE

Plaintiff asserts that Defendant became aware of Plaintiff's diagnosed PTSD, her ongoing suicidal ideations, and her need to go to a hospital, when Plaintiff communicated this information

---

[2] Some cases additionally require that the plaintiff demonstrate that the "official subjectively intended that harm occur." *See Thompson v. Upshur Cty.*, 245 F.3d 447, 459 (5th Cir. 2001); *see also Sanchez v. Young Cty.*, 866 F.3d 274, 280 (5th Cir. 2017). However, as the Fifth Circuit recently clarified, the subjective intent element "is contrary to the weight of our case law and to the Supreme Court precedent from which our cases flow," and, thus, is not considered here. *Garza*, 922 F.3d at 634-35.

to Defendant in her cruiser on the way to Intox. (Doc. No. 97-2 at 104.) Plaintiff claims that Defendant, acting with deliberate indifference, refused Plaintiff's request to be taken to a hospital for treatment and refused to take any other measures to address her suicidal outcry. (Doc. No. 97-2 at 104; Doc. No. 97-10.) Defendant states that Plaintiff did not mention suicide or needing medical attention until she was booked at the jail, at which time she was examined by a nurse and transported to the hospital. (Doc. No. 97-5 at 138, 148, 150.) Because Defendant turned off her camera, there is no video evidence to support either party's version of events. (Doc. No. 97-5 at 136.)

   1. *Subjective Knowledge of Substantial Risk of Serious Harm*

The Fifth Circuit has repeatedly recognized that psychological conditions can pose a substantial risk of serious harm.

> A serious medical need may exist for psychological or psychiatric treatment, just as it may exist for physical ills. A psychological or psychiatric condition can be as serious as any physical pathology or injury, especially when it results in suicidal tendencies. And just as a failure to act to save a detainee from suffering from gangrene might violate the duty to provide reasonable medical care absent an intervening legitimate government objective, failure to take any steps to save a suicidal detainee from injuring himself may also constitute a due process violation . . . .

*Partridge v. Two Unknown Police Officers of Houston*, 791 F.2d 1182, 1187 (5th Cir. 1986); *see also Arenas v. Calhoun*, 922 F.3d 616, 621 (5th Cir. 2019) ("Suicide is an objectively serious harm implicating the state's duty to provide adequate medical care." (citing *Hare v. City of Corinth*, 74 F.3d 633, 644 (5th Cir. 1996) (en banc))); *Rhyne v. Henderson Cty.*, 973 F.2d 386, 391 (5th Cir.

9

1992) ("The failure to provide pre-trial detainees with adequate protection from their known suicidal impulses is actionable under § 1983 as a violation of the detainee's constitutional rights.").

Because the Court must draw all inferences in Plaintiff's favor, the Court finds that she has shown that Defendant had subjective knowledge of a substantial risk of serious harm. Here, the parties offer "competing versions of what occurred," and there is no video evidence to "resolve the dispute," so the Court must proceed on the assumption that Plaintiff did in fact tell Defendant that she was suicidal, suffering from PTSD, and required medical assistance during the ride to Intox. *See Bourne v. Gunnels*, 921 F.3d 484, 492-93 (5th Cir. 2019); *Grogan v. Kumar*, 873 F.3d 273, 279 (5th Cir. 2017). Additionally, a disabled placard was clearly visible in the front window of Plaintiff's car, facing Defendant's cruiser while the scene was processed. (Doc. No. 97-6 at 1:05-1:22.) Defendant was told by the EMT that Plaintiff had prescription pills in her hand and an open water bottle between her legs, and Defendant observed that Plaintiff was already disoriented and only semi-conscious. (Doc. No. 97-2; Doc. No. 97-3; Doc. No. 97-4.) Further, Defendant had previously taken classes in Suicide Prevention, Inmates with Mental Illness, and Crisis Intervention Training. (Doc. No. 97-23 at 6-7.)

These facts could suggest that Plaintiff was either on the brink of a suicide attempt via prescription overdose or had already overdosed on sleeping pills. "A reasonable jury could infer that, as an officer trained in the assessment of suicide risk and screening for mental health issues of inmates . . . , [Defendant] appreciated that [Plaintiff] presented a significant risk of suicide." *Hyatt*, 843 F.3d at 178-79. The Court finds that there is a genuine dispute of material fact as to whether Defendant was subjectively aware of Plaintiff's substantial risk of serious harm.

### 2. Failure to Take Reasonable Measures to Abate Risk

Plaintiff was arrested just before 1 AM. (Doc. No. 97-10 at 4.) Taking as true Plaintiff's assertion that she told Defendant she was suicidal during the ride to Intox, Defendant became aware of the risk of suicide around 1:35 AM. (Doc. No. 97-10 at 4.) By this point, Defendant was also aware that Plaintiff had ingested four sleeping pills. (Doc. No. 97-2 at 6.) It is undisputed that Defendant did not take Plaintiff to the hospital until around 5:00 AM, when she was directed to do so by the jail's nurse and staff doctor. (Doc. No. 97-2 at 6; Doc. No. 97-10 at 5.) Between 1:35 and 5:00 AM, Plaintiff was left alone in a jail cell at Intox for approximately two hours before being seen by the nurse for her blood draw. (Doc. No. 97-5 at 138; Doc. No. 97-10 at 5.) That nurse was not advised that Plaintiff was feeling suicidal, or that she had ingested four sleeping pills. (Doc. No. 97-5 at 144.) A medical professional was told of Plaintiff's suicidal thoughts only upon her booking at the jail, sometime after 4:21 AM. (Doc. No. 97-2 at 6; Doc. No. 97-10 at 5.)

Taking the evidence in the light most favorable to Plaintiff, the Court finds that it was unreasonable for Defendant to take *no* action for almost three hours after learning of Plaintiff's suicidal ideations and possible overdose just hours earlier. Defendant "refused to treat [Plaintiff], and ignored h[er] complaints." *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001); *see also Brown v. Strain*, 663 F.3d 245, 250-51 (5th Cir. 2011) ("[Defendant] gives no persuasive reason why Plaintiffs' allegations that he was aware that Brown had overdosed on cocaine and needed immediate medical treatment are legally insufficient to either support their claim or defeat his qualified immunity defense, which are analyzed under the same deliberate indifference standard."); *Rhyne*, 973 F.2d at 391 ("The failure to provide pre-trial detainees with adequate protection from their known suicidal impulses is actionable under § 1983 as a violation of the detainee's constitutional rights."); *Partridge*, 791 F.2d at 1187 (5th Cir. 1986) ("[F]ailure to

11

take any steps to save a suicidal detainee from injuring himself may also constitute a due process violation . . .").

Because a reasonable jury could find that Defendant was subjectively aware of a substantial risk of serious harm to Plaintiff, and failed to take reasonable measures to abate that risk, the Court finds that Plaintiff's deliberate indifference claim should survive summary judgment.

B. QUALIFIED IMMUNITY

1. *Violation of a Constitutional Right*

As described above, the Court concludes that a reasonable jury could find that Defendant acted with deliberate indifference in violation of due process.

2. *Defendant's Conduct was Objectively Unreasonable in Light of Clearly Established Law*

The Fifth Circuit has consistently held that "the law is clearly established that jailers must take measures to prevent inmate suicides once they know of the suicide risk . . ." *Hyatt*, 843 F.3d 172, 177-78 (5th Cir. 2016) (quoting *Hare v. City of Corinth*, 135 F.3d 320, 328-29 (5th Cir. 1998)); *see also Flores v. Cty. of Hardeman*, 124 F.3d 736, 738 (5th Cir. 1997) ("A detainee's right to adequate protection from known suicidal tendencies was clearly established when Flores committed suicide in January 1990.").

Here, the question is whether, assuming that Defendant learned of Plaintiff's suicidal ideations around 1:35 AM, Defendant had fair notice that she was required to take measures to address Plaintiff's expressed suicidal thoughts sometime sooner than three hours later. The Court finds that she did. The cases cited in the above section finding that Defendant's actions were unreasonable are all from before Plaintiff's arrest in 2014. *See Brown*, 663 F.3d at 250-51 (5th Cir. 2011) ("[Defendant] gives no persuasive reason why Plaintiffs' allegations that he was aware that

12

Brown had overdosed on cocaine and needed immediate medical treatment are legally insufficient to either support their claim or defeat his qualified immunity defense, which are analyzed under the same deliberate indifference standard."); *Domino*, 239 F.3d at 756 (5th Cir. 2001); *Rhyne*, 973 F.2d at 391 (5th Cir. 1992) ("The failure to provide pre-trial detainees with adequate protection from their known suicidal impulses is actionable under § 1983 as a violation of the detainee's constitutional rights."); *Partridge*, 791 F.2d at 1187 (5th Cir. 1986) ("[F]ailure to take any steps to save a suicidal detainee from injuring himself may also constitute a due process violation . . .").

Although the Fifth Circuit has noted that the law is not clearly established regarding what measures must be taken once officials know of a suicide risk, Defendant took *no* measures to address Plaintiff's risk of suicide or provide her medical treatment after Plaintiff told Defendant she was experiencing suicidal ideations, asked to be taken to a hospital, and admitted that she had consumed four sleeping pills (with more in her hand apparently about to be ingested). *See Hare v. City of Corinth*, 135 F.3d 320, 328-29 (5th Cir. 1998) ("[W]hile we conclude that the law is clearly established that jailers must take measures to prevent inmate suicides once they know of the suicide risk, we cannot say that the law is clearly established with any clarity as to what those measures must be."). Instead, with the knowledge of Plaintiff's recent overdose, Defendant left Plaintiff mostly unattended in the backseat of the cruiser while Plaintiff's car was searched, from approximately 12:55 AM to 1:30 AM. (Doc. No. 97-6; Doc. No. 97-8; Doc. No. 97-10.) Then, with knowledge of both the overdose and Plaintiff's communicated suicidal thoughts, Defendant left Plaintiff in a holding cell at Intox for about two hours before she was seen by a medical professional for her blood draw. (Doc. No. 97-5 at 138; Doc. No. 97-10.) Defendant did not tell the nurse taking Plaintiff's blood about Plaintiff's suicidal thoughts or about the overdose. (Doc. No. 97-5 at 138, 144.) Accepting Plaintiff's evidence that she told Defendant about her suicidal

13

ideations and need for medical attention around 1:35 AM, the Court finds that Defendant's total failure for three hours to take any measures to address Plaintiff's risk of suicide is a violation of clearly established law.

Ultimately this case will boil down to whether a jury believes Plaintiff's or Defendant's testimony about what was said in the cruiser on the way to Intox. If, as Defendant has stated, Plaintiff made only one report of suicidal ideations, shortly after which Defendant transported her to the hospital as directed by a jail physician, then Defendant's conduct may well have been objectively reasonable. However, on a motion for summary judgment, the Court may not weigh credibility, but must view the facts in the light most favorable to the Plaintiff. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). On those facts, Defendant would not be entitled to qualified immunity.

## IV. CONCLUSION

For the reasons stated on the record, and set forth more fully above, the Defendant's Motion for Summary Judgment is **DENIED.**

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas, on this the 14th day of August, 2019.

_____
HON. KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE